# In the United States Court of Federal Claims

No. 12-592L

(Filed: April 16, 2015)

```
*************************************
                                      *
QUAPAW TRIBE OF OKLAHOMA,             *
                                      *
                                      *
                Plaintiff,            *
                                      *
v.                                    *
                                      *
THE UNITED STATES,                    *
                                      *
                Defendant.            *
                                      *
*************************************
```

Indian Tribe Claims for Tribal Trust Fund Mismanagement; Cross-Motions for Partial Summary Judgment; Fiduciary Duties to Indian Tribes; Breach of Trust; 25 U.S.C. § 164.

*Nancie G. Marzulla,* with whom were *Roger J. Marzulla,* Marzulla Law, LLC, Washington, D.C., *Stephen R. Ward* and *John L. Williams*, Conner & Winters, LLP, Tulsa, Oklahoma, Of Counsel, for Plaintiff.

*Stephen R. Terrell,* Trial Attorney, with whom were *John C. Cruden,* Assistant Attorney General, and *Peter Kyrn Dykema*, Environment and Natural Resources Division, U.S. Department of Justice, Washington, D.C., *Kenneth Dalton, Shani N. Walker,* and *Karen Boyd,* Office of the Solicitor, U.S. Department of Interior, *Thomas Kearns* and *Rebecca Saltiel*, Office of the Chief Counsel, Bureau of the Fiscal Service, U.S. Department of the Treasury, Of Counsel, for Defendant.

## OPINION AND ORDER ON
## CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

WHEELER, Judge.

Plaintiff, the Quapaw Tribe of Oklahoma, is a federally recognized Indian nation. The Quapaw Tribe commenced this action on September 11, 2012 by filing a complaint for money damages arising from the Government's alleged breach of fiduciary and trust obligations owed to the Quapaw Tribe. The complaint contains three causes of action.

On November 13, 2012, the Government filed a motion for partial dismissal of the complaint, asserting that the Court lacks subject matter jurisdiction or that Plaintiff had failed to state claims upon which relief can be granted.  On July 16, 2013, the Court dismissed two of the Quapaw Tribe's claims, leaving intact only the cause of action for trust mismanagement and mismanagement of the Quapaw Industrial Park leases.  Quapaw Tribe of Oklahoma v. United States, 111 Fed. Cl. 725 (2013).  After months of discovery, the Government filed a motion for partial summary judgment on December 8, 2014.  This motion focuses on the monetary judgment funds that the Indian Claims Commission ("ICC") awarded to the Quapaw Tribe in 1954 as damages for gross underpayment in land purchases completed in the 1800s.  The judgment funds were placed in Government trust accounts and were to be distributed on a per capita basis to certain Indians of Quapaw blood and their heirs, identified by an 1890 membership roll.  The Government argues that the Quapaw Tribe is not entitled to recover any unclaimed per capita payments from the ICC judgment funds because the current Tribe includes adoptees and other persons that are not the proper heirs or legatees of the Quapaw members listed on the 1890 membership roll.  On January 22, 2015, the Quapaw Tribe filed a response and cross-motion for partial summary judgment, claiming that the current tribe is the proper recipient of any unclaimed judgment funds, and that the evidence leaves no material dispute that the judgment fund was not fully paid.

The Government filed a reply and response on February 9, 2015, arguing that the group of individuals entitled to ICC judgment money does not have its own governing body separate and apart from the Quapaw Tribe's Business Committee, as required by the statute governing "restoration to tribal ownership of unclaimed per capita and other individual payments of tribal trust funds," 25 U.S.C. § 164.  The Government further argues that the Plaintiff's cross-motion for summary judgment should fail due to a lack of evidence that the judgment fund was not fully paid.  On February 26, 2015, Plaintiff filed its reply, arguing that the Secretary of the Interior's recognition of the Quapaw Tribe's governing body is sufficient to satisfy 25 U.S.C. § 164, and that the Quapaw Analysis, described infra Part I, provides sufficient evidence of nonpayment of the ICC judgment fund.  The Court heard oral argument on these issues on March 25, 2015.  The cross-motions for partial summary judgment are now ripe for decision.  The Court finds that the Quapaw Tribe is the proper recipient of any unclaimed per capita payments from the ICC judgment trust.  However, due to the existence of disputed material facts on whether all of the funds were paid, the Court denies both motions for partial summary judgment and will reserve these issues for trial.

I.      Factual and Procedural History

The Court summarized the factual background of this case in its July 16, 2013 opinion on the Government's motion to dismiss.  Quapaw Tribe of Oklahoma, 111 Fed.

Cl. at 727-29.  The additional facts relevant to these cross-motions for partial summary judgment are described below.

In 1954, the predecessor to this Court upheld the ICC's award of damages to the Quapaw Tribe based on the United States' grossly inadequate payment for the Tribe's ancestral lands in Arkansas ceded to the United States by treaty in 1824.  Quapaw Tribe of Indians v. United States, 128 Ct. Cl. 45 (1954), aff'g and rev'g in part, 1 Ind. Cl. Comm. 644 (1951); Pl.'s Resp. at 1.  The ICC awarded the Quapaw Tribe $820,024.46, plus attorneys' fees and costs.  Pl.'s Resp. at 5.  Congress appropriated funds to pay the judgment through the Supplemental Appropriation Act of August 26, 1954.  Pub. L. No. 83-663, 68 Stat. 801, 827-28 (1954); see also 25 U.S.C. § 912 (identifying 68 Stat. 801 as the Act appropriating funds to the Quapaw Indians for the 1954 ICC judgment).  The Secretary of the Interior placed the funds into Treasury Department trust account number 14X7156 in the name of the Quapaw Tribe, and established a second trust account, No. 14X7656, to accumulate four percent annual interest.  Pl.'s Resp. at 6.

The Federal Government recognized the Quapaw Tribe in 1818 when the Tribe signed a treaty ceding land to the United States.  Id. at 7; Decl. of John L. Berrey, Chairman of Quapaw Tribe ("Berrey Decl."), at 2.  In December 1954, the Quapaw Tribal Council adopted a resolution that only those persons with Quapaw blood should receive ICC judgment funds, and selected an 1890 membership roll for use in determining such heritage.  Pl.'s Resp. at 7.  In 1956, the Tribe approved a resolution to convert its governance to an elected body called the Quapaw Tribal Business Committee.  Id. at 7-8.  In 1959, Congress approved a plan to distribute the ICC judgment funds, plus interest, to lineal descendants of the original Quapaw Tribe members listed on the 1890 roll.  Id. at 8.  President Eisenhower signed the Distribution Act on July 17, 1959, authorizing the distribution of the judgment funds to lineal descendants of the Quapaw members listed on the 1890 roll.  Id. at 8-9.

During 1960 – 1962, all of the principal and interest balances were removed from the Treasury Department's trust accounts.  Id. at 10.  The parties disagree on what happened to these funds after removal.

In 2002, the Tribe filed suit in the U.S. District Court for the Northern District of Oklahoma in a case captioned Quapaw Tribe of Oklahoma (O-Gah-Pah) v. U.S. Department of the Interior, No. 02-CV-129-H(M) (N.D. Okla.).  The Quapaw Tribe requested an accounting of the historical federal management of the Tribe's trust assets.  On November 5, 2004, the Quapaw Tribe entered into a settlement agreement with the United States whereby the parties agreed that Quapaw Information Systems, Inc., a not-for-profit Tribal entity, would prepare an analysis of the Government's management of Tribal assets ("the Quapaw Analysis").  Compl. ¶ 9.  The Tribe agreed to dismiss its lawsuit

and to waive any rights to an accounting of its trust assets up to and including the date of the settlement agreement. Id. Upon completion of the Quapaw Analysis, the Tribe would be deemed to have been furnished with an accounting of the Tribe's trust assets. Id. In entering into this settlement agreement, the Quapaw Tribe reserved all claims for money damages arising from past events and transactions. The settlement did not purport to compromise or waive the claims of any tribe member for money damages. Id. at ¶ 10.

Between 2004 and 2010, Quapaw Information Systems investigated and prepared the Quapaw Analysis. Id. at ¶ 11. The team performing this review undertook a comprehensive examination of files and documents made available by the Office of Historic Trust Accounting and other agencies to determine whether and to what extent the Department of Interior met its fiduciary obligations to the Tribe and individual trust beneficiaries. Id. On June 1, 2010, Quapaw Information Systems completed and transmitted the Quapaw Analysis Report to the Government. Id. at ¶ 12. On November 19, 2010, the Department of Interior accepted the report as complete. Id. Plaintiff claims that the Quapaw Analysis identified many pervasive breaches of the Government's fiduciary duty to the Quapaw Tribe. Id. at ¶ 13.

## II.    Standard of Review

Summary judgment is appropriate where the evidence demonstrates that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–49 (1986); Casitas Mun. Water Dist. v. United States, 543 F.3d 1276, 1283 (Fed. Cir. 2008). A "genuine" dispute is one that "may reasonably be resolved in favor of either party," Anderson, 477 U.S. at 250, and a "material" fact is one that "might affect the outcome of the suit under the governing law[.]" Id. at 248. The moving party carries the burden of establishing its entitlement to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once that burden is met, the onus shifts to the non-movant to identify evidence demonstrating a dispute over a material fact that would allow a reasonable finder of fact to rule in its favor. Anderson, 477 U.S. at 256. It is not necessary that such evidence be admissible, but mere denials, conclusory statements, or evidence that is merely colorable will not defeat summary judgment. Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 249–50.

In considering a motion for summary judgment, a court does not weigh each side's evidence but, rather, must draw all inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, as here, the parties have filed cross-motions for summary judgment, the Court evaluates each motion on its own merits and makes all reasonable inferences against the party whose motion is under consideration. Marriott Int'l Resorts, L.P. v. United States,

586 F.3d 962, 968–69 (Fed. Cir. 2009) (internal citation omitted).  To the extent a genuine issue of material fact exists, both motions must be denied.  Id. at 969.

III.   Discussion

A. Proper Recipient of Any Undistributed Funds

A threshold issue in the cross-motions for partial summary judgment is whether the present Quapaw Tribe is entitled to recover any unclaimed per capita payments from the ICC judgment funds, if any exist.  The Government argues that the Quapaw Tribe was not the intended beneficiary of the trust accounts.  Instead, those persons entitled to the trust payments are the Indians listed on the 1890 roll and their lineal descendants and heirs ("the 1890 heirs").  Def.'s Mot. at 5-6.  As a result, the Government argues, the language of 25 U.S.C. § 164 prevents the unclaimed trust fund payments from being credited to the Tribe.  Id. at 8.  Thus, because the "group entity" entitled to the ICC judgment funds consists of only the 1890 heirs and not any adoptees that may comprise the current Tribe, the Tribe itself is not the lawful recipient of any unclaimed funds.  Id. at 8-9.  According to the Government, the 1890 heirs are the only group entitled to unpaid shares, and this group has no governing body of its own.  Id.

In opposition, Plaintiff argues that the relevant "group entity" under 25 U.S.C. § 164 is the Quapaw Tribe, to which all of the members listed on the 1890 roll belonged.  Pl.'s Resp. at 20-36.  Accordingly, Plaintiff contends that the Tribe's Business Committee meets the requirements of § 164 as a federally recognized governing body, and that any unclaimed payments should be credited to the Tribe.  Id. at 38-39.

1. Judgment Fund Trust Beneficiary

The record in this case supports a conclusion that the ICC judgment was made in favor of the Quapaw Tribe, not the group of individuals on an 1890 roll.  See Quapaw Tribe of Indians, 128 Ct. Cl. at 47 ("The Quapaw Tribe of Indians has appealed to this court from a final determination of the Indian Claims Commission . . . allowing certain offsets . . . from the amount found to be due the tribe."); H.R. Rep. No. 86-593, at 1 ("The Quapaw Tribe was awarded a judgment by the Indian Claims Commission on May 7, 1954. . . .").  On August 26, 1954, Congress passed the Supplemental Appropriation Act to appropriate $927,668.04 to pay the judgment and related attorneys' fees.  Pub. L. No. 83-663, 68 Stat. 801, 827-28 (1954).  Then, following the Court of Claims' decision upholding the relevant part of the ICC judgment, Congress authorized distribution of this judgment on a per capita basis on June 29, 1959.  H.R. Rep. No. 86-593.  Thus, from the beginning, the *appropriation* of the judgment funds was performed and held in trust on behalf of the Quapaw Tribe, while the *distribution* was made on a per capita basis to certain Tribal

members and their heirs.  Moreover, the Tribe was involved in drafting and approving the very distribution scheme that the Government claims prevents it from recovering.  See 25 U.S.C. § 911 ("[T]he Secretary shall permit the examination of the applications by the Quapaw Tribal Business Committee or by persons having a material interest therein for the purpose of lodging protests against any application.").  The Government's arguments that the Quapaw Tribe "cannot demonstrate . . . that it owns, possesses, or has a beneficial interest in the funds in the ICC Docket No. 14 judgment award accounts," are without merit.  Def.'s Mot. at 6.

       2.   Unclaimed Funds Under 25 U.S.C. § 164

The language of 25 U.S.C. § 164 provides:

> [T]he share of an individual member of an Indian tribe or group in a per capita or other distribution . . . of Indian tribal or group funds held in trust by the United States, . . . and any interest earned on such share that is properly creditable to the individual shall be restored to tribal ownership if for any reason such share cannot be paid to the individual entitled thereto and remains unclaimed for a period of six years from the date of the administrative directive to make the payment, or one year from September 22, 1961, whichever occurs later[.]

The statute continues, however:

> *Provided*, That if such individual is a member of an Indian tribe or group that has no governing body recognized by the Secretary of the Interior as authorized to act on behalf of the tribe or group, such unpaid share and interest shall be regarded as not capable of restoration to a tribal or group entity and shall be deposited in the general fund of the Treasury of the United States.

25 U.S.C. § 164.  Despite the Government's attempt to stretch the meaning of § 164 unreasonably, the mandate of the statute is unambiguous:  if a judgment award is made to an Indian Tribe, and distribution is to be made on a per capita basis to individual members of the Tribe, any unclaimed or undistributed individual funds shall be credited to the Tribe, subject to the conditions set forth in the statute.  Contrary to the Government's position, the statute does not define the relevant group or tribe as an association of individuals that exists separate and apart from the awardee Tribe.  Such a reading strains the statute's plain language and is at odds with its purpose.  Subsets of Indian tribes are unlikely to have federally recognized governing bodies apart from those of the tribes.  Most, if not all, per capita distributions to Indians will be premised on those individuals' membership in a

certain tribe, so any requirement that the subset of individuals itself has a federally recognized governing body effectively limits § 164 recovery to circumstances where the per capita individuals comprise the entire tribe as it exists at the time of recovery.  Thus, the Government's reading of the statute creates an unreasonable scheme that would prevent a tribe from recovery merely for adding a single new member after the creation of a trust fund distribution scheme.  That the subsequent adoption of new members should prevent a tribe from recovering trust funds to which it is otherwise entitled creates a perverse incentive and a false choice between communal inclusion and economic recovery.  The Court declines to read this incentive into an otherwise unambiguous statute.

As this Court reasoned in <u>Chippewa Cree Tribe of Rocky Boy's Reservation v. United States</u> (Hewitt, J.), "statutes that direct the government in the manner tribal funds are to be distributed do not create individual rights; where the tribe or group is the conduit through which benefits are distributed, 'the primary recipient [is] still the tribe or band.'" 73 Fed. Cl. 154, 160 (2006) (quoting <u>Hebah v. United States</u>, 428 F.2d 1334, 1337-38, 192 Ct. Cl. 785 (1970)).  The logic of <u>Chippewa Cree</u> applies to the circumstances here.  As previously explained, the Tribe is the original and primary recipient of the ICC judgment, and remains so despite the creation of a per capita distribution scheme.

Further, the Government provides no legal support for its argument that § 164 applies to a *pro forma* group of individuals that is somehow created when per capita distributions are made to some, but not all, Tribal members.  Instead, the Government merely assumes that the group of Quapaw Indians on the 1890 roll and their heirs require their own governing body, separate and apart from the Tribe's governing body, in order to receive any unclaimed judgment funds.  The Government ignores the fact that the fund was awarded to the Tribe in the first place, and only upon distribution of the fund was it decided that per capita payments would be made.  Based upon the plain meaning of § 164, any unsuccessful per capita payments should be credited to the Tribe in satisfaction of the judgment it obtained against the Government for unconscionable land purchases in the early 1800s.

The Court finds no material facts in dispute on this issue and holds that any unclaimed judgment funds are properly credited to the Quapaw Tribe under the plain language of 25 U.S.C. § 164.

B.  Distribution of the Funds

The remaining issue is whether the Quapaw Tribe is entitled to recover all or some of the judgment funds that it alleges the Government failed to pay.  Specifically, a factual question remains as to whether the judgment funds were actually and fully paid to the proper recipients by 1963.  In order to rule on this issue on cross-motions for summary judgment, the Court must be satisfied that there remains no genuine dispute as to any

7

material fact.  A material fact is any fact that might affect the outcome of the suit.  Given the continuing and material dispute over the accounting of the judgment funds, the Court is unwilling to grant summary judgment to either party.  A discussion of this factual dispute follows.

In its motion for partial summary judgment, the Government states as fact that "the funds in ICC Docket No. 14 principal (x7156) and its corresponding interest account (x7656) were disbursed in Fiscal Years 1960 and 1961." Def.'s Mot. at 4.  Insofar as this statement suggests the funds were properly paid out to the Indian recipients, Plaintiff and the Government genuinely dispute this fact.  See Def.'s Resp. at 5; Pl.'s Resp. at 17.  The Government cites to three sources to support its theory that the funds were actually and properly disbursed.  First, the Government argues that the Tribe admitted to receiving the funds at a meeting of the Tribal General Council on July 16, 1962, when a Tribe representative stated, "[t]he past year was a most eventful year with the payment of the Quapaw funds.  Adults were paid while the children's funds were held in trust."  Def.'s Resp. at 5; Appendix. Ex. 2.  Second, the Government points to evidence that Individual Indian Money account ledgers show $900.00 per capita payments were made into trust accounts for minors.  Supplemental Appendix of Exhibits, Ex. 7.  Lastly, the Government argues that Treasury accounting records show that all of the funds in the judgment award accounts were "disbursed" by 1962, and could only have lawfully been disbursed in accordance with the Distribution Act.  Def.'s Resp. at 6; Appendix Exs. 4 & 5.

In opposition, Plaintiff argues that some or all of the payments were never made, pointing to the Quapaw Analysis.  This government-approved analysis concluded that approximately 25 percent of the distributions were unaccounted for and could not have been made.  Pl.'s Reply at 11.  Plaintiff also points to a lack of accounting records for nearly 1,100 alleged distributions by the Government, arguing that the Government's Exhibit 7 only shows payments in trust for 88 minor individuals.  Pl.'s Reply at 15-16; Pl.'s Mot. to Strike Ex. 7 at 3.  Plaintiff also disputes the import of the July 16, 1962 meeting minutes quoted by the Government, claiming instead that the minutes show a lack of payment.  First, Plaintiff points to the language describing the judgment amount of $1,029,599.88 as "Total to Distribute," suggesting that it had not yet been distributed.  Pl.'s Ex. 32, Report of a Meeting of Quapaw General Council ("Ex. 32, Meeting Minutes") at 3.  Second, Plaintiff cites language expressing frustration where a Tribal representative describes the Tribe's attempt to have a voice "in the individual funds of the Quapaw funds as a whole," but then states, "[w]e were not successful because as I understand it the funds are still in trust." Ex. 32, Meeting Minutes at 3; Pl.'s Reply at 17.  Third, Plaintiff cites to evidence that the Quapaw Tribal Council requested an audit of the General Accounting Office regarding "considerable inefficiencies" in the payments.  Pl.'s Reply at 17-18.  Lastly, Plaintiff quotes a Government official from the Bureau of Indian Affairs who was

present at the 1962 meeting and noted that he "hadn't seen a Quapaw Indian that wasn't mad," suggesting anger over nonpayment. Id. at 18.

In deciding the cross-motions for partial summary judgment on this issue, the Court considered at least two factors. Foremost, the Court notes that fact discovery was still ongoing in this case when the motions were filed. As of March 31, 2015, the Government anticipated producing over 452,000 document images to Plaintiff before the close of fact discovery on April 16, 2015. Gov.'s Status Report, Dkt. No. 81, at 5. The Court declines to draw evidentiary conclusions when material facts are in dispute and ongoing discovery may yet shed more light on the issues. Second, the Court must consider the parties' respective burdens. To prevail at the summary judgment stage, Plaintiff must sufficiently allege a breach of trust by the Government through affirmative evidence of nonpayment so that the finder of fact could not reasonably rule in favor of the Government. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986). The Court finds that the Government's evidence of accounting records and meeting minutes sufficiently rebuts Plaintiff's argument so as to create a continuing and genuine dispute. On the other hand, the Government has not convinced the Court that records of emptied Treasury accounts and presumptions of regularity are sufficient to decide this issue. Plaintiff's evidence of meeting minutes and the conclusions of the Quapaw Analysis satisfy the Court, again, that the issue is in genuine dispute. Therefore, the Court denies both motions for partial summary judgment on the question of whether the Tribe is entitled to recover some or all of the trust funds.

IV.    Conclusion

For the reasons set forth above, the Court finds that the Quapaw Tribe is the proper recipient of any undistributed ICC judgment funds in this case. However, both the Government's Motion and Plaintiff's Cross-Motion for Partial Summary Judgment are DENIED.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge